# In the United States Court of Federal Claims

BID PROTEST
No. 20-1417C
Filed Under Seal: April 29, 2021
Reissued: May 10, 2021[*]
NOT FOR PUBLICATION

| | |
|---|---|
| VAS REALTY, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Post-Award Bid Protest; Judgment Upon |
| | ) the Administrative Record, RCFC 52.1; |
| THE UNITED STATES, | ) RCFC 12(b)(1); Subject-Matter |
| | ) Jurisdiction; Standing. |
| Defendant, | ) |
| | ) |
| v. | ) |
| | ) |
| CAPE MORAINE LLP, | ) |
| | ) |
| Defendant-Intervenor. | ) |
| | ) |

*Anuj Vohra*, Counsel of Record, *Christian N. Curran*, Of Counsel, *Alexandra L. Barbee-Garrett*, Of Counsel, Crowell & Moring LLP, Washington, DC, for plaintiff.

*Stephen C. Tosini*, Senior Trial Counsel, *Douglas K. Mickle*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Jeffrey Bossert Clark*, Acting Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC; *Nancy E. O'Connell*, Of Counsel, General Services Administration, for defendant.

*Robert C. MacKichan, Jr.*, Counsel of Record, *Gordon Griffin*, Of Counsel, *Hillary J. Freund*, Of Counsel, Holland & Knight LLP, Washington, DC, for defendant-intervenor.

---

[*] This Memorandum Opinion and Order was originally filed under seal on April 29, 2021. ECF No. 56. The parties were given an opportunity to advise the Court of their views with respect to what information, if any, should be redacted from the Memorandum Opinion and Order. On May 5, 2021, defendant-intervenor filed a joint status report on behalf of the parties stating that the parties had no redactions to the Memorandum Opinion and Order. ECF No. 59. And so, the Court is reissuing its Memorandum Opinion and Order, dated April 29, 2021, as the public opinion.

**MEMORANDUM OPINION AND ORDER**

GRIGGSBY, Judge

I.  **INTRODUCTION**

Plaintiff, VAS Realty, Inc. ("VAS"), brings this post-award bid protest action challenging the General Services Administration's ("GSA") decision to award a lease for a facility to house the Department of Homeland Security, Immigrations and Customs Enforcement ("DHS-ICE") in Warwick, Rhode Island to Cape Moraine, LLC ("Cape Moraine"). The government and Cape Moraine have moved to dismiss this matter for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). *See generally,* Def. Mot.; Def.-Int. Mot. The parties have also filed cross-motions for judgment upon the administrative record, pursuant to RCFC 52.1. *See generally* Pl. Mot.; Def. Mot.; Def.-Int. Mot. For the reasons discussed below, the Court: (1) **GRANTS** the government's and Cape Moraine's motions to dismiss; (2) **DENIES-as-MOOT** VAS's motion for judgment upon the administrative record; (3) **DENIES-as-MOOT** the government's and Cape Moraine's cross-motions for judgment upon the administrative record; and (4) **DISMISSES** the complaint.

II.  **FACTUAL AND PROCEDURAL BACKGROUND**[1]

   A.  **Factual Background**

This post-award bid protest dispute involves a challenge to GSA's decision to award a lease for a facility to house DHS-ICE in Warwick, Rhode Island to Cape Moraine (the "ICE Lease"). Compl. at ¶ 1. VAS is the incumbent lessor of the facility that currently houses DHS-ICE, which is located at 1 International Way, Warwick, Rhode Island. *Id.*

   1.  **The Request For Lease Proposals**

On September 18, 2017, GSA issued a request for lease proposals (the "RLP") for the ICE Lease. AR Tab 10 at 48. The RLP seeks proposals for a 15-year full-term, 10-year firm-

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the administrative record ("AR"); VAS's complaint ("Compl.") and motion for judgment upon the administrative record ("Pl. Mot."); the government's cross-motion for judgment upon the administrative record and motion to dismiss ("Def. Mot."); and Cape Moraine's cross-motion for judgment upon the administrative record and motion to dismiss ("Def.-Int. Mot."). Except where otherwise noted, the facts cited herein are undisputed.

2

term lease, for a facility to house DHS-ICE within either Warwick, Johnston, Providence, Pawtucket, or Cranston, Rhode Island. AR Tab 15 at 268-69.

Specifically, the RLP provides that GSA seeks a building with 20,579 square feet of American National Standards Institute/Building Owners and Management Association Office Area ("ABOA") useable office space.[2] AR Tab 10 at 48. The RLP also requires that offerors provide 34 surface/outside parking spaces. AR Tab 7 at 29 (RLP Amendment 3).

In addition, the RLP provides that, if the offeror is not the owner of the property proposed in response to the RLP, the offeror must submit "authorization from the ownership entity [allowing the offeror] to submit an offer on the ownership entity's behalf." AR Tab 10 at 56. Lastly, the RLP provides that GSA would award the ICE Lease "to the responsible [o]fferor whose offer conforms to the requirements of [the] RLP and the Lease documents and is the lowest priced technically acceptable offer submitted." *Id.* at 60.

### 2. The Evaluation Process And Award To Cape Moraine

GSA initially received three timely proposals in response to the RLP, including a proposal from VAS. AR Tab 37 at 562; *see also* AR Tab 11. VAS's initial proposal offered its property located at 1 International Way, Warwick, Rhode Island, which includes 30,000 total ABOA square feet of office space, of which 26,087 ABOA square feet is usable, and 130 parking spaces. AR Tab 11 at 155-56. VAS states in its initial proposal that the excess 5,508 ABOA square feet of the office space included in its proposal is "unmarketable," because this space does not include parking spaces. *Id.* at 155. And so, VAS offered this excess office space to GSA at a lower rental rate. *Id.*

On October 31, 2017, GSA issued a deficiency letter to VAS, which directed VAS to, among other things: (1) correct the amount of offered rentable square footage in its proposal to match the advertised square footage amount, (2) revise and confirm several rental rates and (3) provide additional forms missing from its initial proposal. AR Tab 12 at 199. VAS responded to GSA on November 7, 2017, by stating that it would adjust its proposal to match the requested

---

[2] ABOA refers to "the area 'where a tenant normally houses personnel, and/or furniture, for which a measurement is to be computed,' as stated by the American National Standards Institute/Building Owners and Managers Association ("ANSI/BOMA") publication, Z65.1-1996." General Service Administration Regulation 570.12; *see also* Compl. at 4 n.1.

ABOA square footage in the RLP.  AR Tab 13 at 201.  VAS also stated, however, that it would "allow [the] [g]overnment use of the unmarketable space as it deems acceptable." *Id.* at 203. And so, VAS's first revised proposal includes a "proposed shell [rent] rate . . . based on 26,087 ABOA square feet and 30,000 rentable square feet to account for the 5,508 ABOA square feet of unmarketable space." *Id.* at 202-03.

On February 22, 2018, GSA issued Amendment No. 2 to the RLP, which modifies the lease terms to a 15-year full-term, 10-year firm-term lease.  AR Tab 15 at 267-69.  After GSA requested final revised proposals in response to the RLP, VAS timely submitted a second revised proposal on March 9, 2018.  *See* AR Tab 21; *see also* AR Tab 16 at 270 (showing that the final proposal revision deadline was March 9, 2018).

The cover letter to VAS's second revised proposal states that VAS has included "unmarketable" space in its second revised proposal at the direction of the GSA contracting officer.  *Id.* at 272.  VAS's second revised proposal also includes a chart showing the shell rental rates for the property, calculated both with and without the excess "unmarketable" space.  *Id.* at 282-83.

On April 20, 2018, Cape Moraine submitted a proposal in response to the RLP.  *See* AR Tab 18.  GSA accepted Cape Moraine's proposal, despite the fact that the deadline for submitting revised proposals had elapsed on March 9, 2018.  *Compare id.* at 338 (showing that Cape Moraine submitted its proposal on April 20, 2018) *with* AR Tab 16 at 270 (showing that the final proposal revision deadline was March 9, 2018).

After reviewing the proposals submitted by VAS and Cape Moraine, GSA drafted a table of deficiencies comparing both proposals.  AR Tab 19 at 355-58.  This table notes that GSA "doesn't need the additional 6,333 RSF available in [the] building that [VAS] is charging for." *Id.* at 357.

On July 9, 2018, GSA issued a deficiency letter to VAS, informing VAS that, "a competitive negotiation range has been established for this procurement and your offer is outside of the competitive negotiation range."  AR Tab 20 at 359.  On the same date, GSA issued Amendment No. 3 to the RLP, which reduces the number of parking spaces required under the RLP from 130 to 34.  AR Tab 7 at 29.

4

VAS and Cape Moraine both timely submitted revised proposals to GSA on July 17, 2018. *See generally* AR Tabs 21-22. The cover letter to VAS's third revised proposal states that the "annual fees for the sally port, outside storage, and the ABOA rate for any space that is deemed unmarketable have been noted" in Section III, Box 31 on Form 1364 of its proposal. AR Tab 21 at 361. VAS also states in its third revised proposal that "these fees and unmarketable rate have not been incorporated into the shell rate in Section II, Boxes 16d and 16e." *Id.*

On August 21, 2018, GSA notified Cape Moraine that it had the "apparent successful offer" in response to the RLP. AR Tab 37 at 563. Thereafter, Cape Moraine and GSA signed Lease Number LRI00279 on October 24, 2018. *Id.*

On October 26, 2018, GSA notified VAS of its decision to award the ICE Lease to Cape Moraine and advised that VAS's proposed rental rate was outside of the "competitive negotiation range." AR Tab 25 at 511.

### 3. VAS's GAO Protest And The OIG Report

On November 26, 2018, VAS filed a protest before the Government Accountability Office ("GAO") challenging GSA's decision to award the ICE Lease to Cape Moraine. *See generally* AR Tab 33. On December 26, 2018, GAO dismissed VAS's bid protest. AR Tab 34 at 555.

After the GAO's Office of Inspector General ("GAO-OIG") received a complaint alleging that government personnel committed acts of fraud, waste, and abuse during the procurement process for the ICE Lease, the GAO-OIG launched an investigation into GSA's conduct in administering the procurement for the ICE Lease. *See generally* AR Tab 37. On March 19, 2020, the GAO-OIG issued its findings and concluded that the procurement at issue "was significantly flawed, compromising the integrity of the procurement and resulting in an improper lease award."[3] AR Tab 37 at 560, 563. And so, the GAO-OIG recommended that GSA "determine whether the lease award should be reevaluated." *Id.* at 561.

---

[3] The GAO-OIG found the following five "deficiencies" in the procurement process for the ICE Lease: (1) GSA accepted and considered a late bid from Cape Moraine; (2) GSA accepted a flawed present value analysis from its broker Jones Lang LaSalle Americas, Inc.; (3) GSA improperly awarded the contract to Cape Moraine, despite that fact that Cape Moraine did not have control of the offered property at the time that it submitted its proposal; (4) GSA failed to conduct a timely or proper debriefing to VAS; and (5) GSA misled VAS throughout the procurement by using conflicting terms regarding VAS's status and

VAS commenced this bid protest action on October 19, 2020.  *See generally* Compl.

B.  **Procedural Background**

VAS filed the complaint in this post-award bid protest matter on October 19, 2020.  *See generally* Compl.  On October 20, 2020, Cape Moraine filed an unopposed motion to intervene, which the Court granted on October 22, 2020.  *See generally* Mot. to Intervene; Scheduling Order, dated October 22, 2020.

On November 12, 2020, the government filed the administrative record, which it subsequently amended on November 16, 2020, and November 20, 2020.  *See generally* AR.  On December 7, 2020, VAS filed a motion for judgment upon the administrative record.  *See generally* Pl. Mot.

On December 22, 2020, the government and Cape Moraine filed their respective responses and opposition to VAS's motion for judgment upon the administrative record, motions to dismiss and cross-motions for judgment upon the administrative record.  *See generally* Def. Mot.; Def.-Int. Mot.

On December 31, 2020, VAS filed a response and opposition to the government's and Cape Moraine's motions to dismiss and cross-motions for judgment upon the administrative record, and a reply in support of its motion for judgment upon the administrative record.  *See generally* Pl. Resp.

On January 11, 2021, the government and Cape Moraine filed their respective replies in support of their motions to dismiss and cross-motions for judgment upon the administrative record.  *See generally* Def. Reply; Def.-Int. Reply.  On April 13, 2021, the Court held oral arguments on the parties' motions.  *See generally* Tr.

These matters having been fully briefed, the Court resolves the pending motions.

---

whether/how VAS's bid would be considered part of the competitive negotiation range.  *See* AR Tab 37 at 570.

### III. LEGAL STANDARDS

#### A. Bid Protest Jurisdiction

The Tucker Act grants the United States Court of Federal Claims jurisdiction over bid protests brought by "an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). In bid protest cases, this Court reviews agency actions under the Administrative Procedure Act's ("APA") "arbitrary and capricious" standard. *See* 28 U.S.C. § 1491(b)(4) (adopting the standard of review set forth in the APA). Under this standard, an "'award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004) (quoting *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001)).

In this regard, the United States Court of Appeals for the Federal Circuit has explained that, "[w]hen a challenge is brought on the first ground, the test is 'whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion, and the disappointed bidder bears a "heavy burden" of showing that the award decision had no rational basis.'" *Id.* (quoting *Impresa*, 238 F.3d at 1332-33). "'When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.'" *Id.* (quoting *Impresa*, 238 F.3d at 1333). In addition, when reviewing an agency's procurement decision, the Court should recognize that the agency's decision is entitled to a "presumption of regularity." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated by Califano v. Sanders*, 430 U.S. 99 (1977). "The [C]ourt should not substitute its judgment for that of a procuring agency . . . ." *Cincom Sys., Inc. v. United States*, 37 Fed. Cl. 663, 672 (1997). And so, "[t]he protestor must show, by a preponderance of the evidence, that the agency's actions were either without a reasonable basis or in violation of applicable procurement law." *Info. Tech. & Applics. Corp. v. United States*, 51 Fed. Cl. 340, 346 (2001), *aff'd*, 316 F.3d 1312 (Fed. Cir. 2003) (citation omitted).

The Court's standard of review "is highly deferential." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). As long as there is "'a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion.'" *Honeywell, Inc. v. United States*, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1301 (D.C. Cir. 1971)). But, if "the agency 'entirely fail[s] to consider an important aspect of the problem [or] offer[s] an explanation for its decision that runs counter to the evidence before the agency,'" then the resulting action lacks a rational basis and, therefore, is defined as "arbitrary and capricious." *Ala. Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

### B.     RCFC 12(b)(1) And Standing

When deciding a motion to dismiss upon the ground that the Court does not possess subject-matter jurisdiction pursuant to RCFC 12(b)(1), this Court must assume that all factual allegations in the complaint are true and must draw all reasonable inferences in the non-movant's favor. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); RCFC 12(b)(1). But, a plaintiff bears the burden of establishing subject-matter jurisdiction, and it must do so by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Servs.*, 846 F.2d 746, 748 (Fed. Cir. 1988). Should the Court determine that "it lacks jurisdiction over the subject matter, it must dismiss the claim." *Matthews v. United States*, 72 Fed. Cl. 274, 278 (2006); *see* RCFC 12(h)(3).

In this regard, standing is a threshold issue which implicates the Court's subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). And so, if a plaintiff cannot establish standing, the Court is without jurisdiction to render a decision on the merits of a claim. *Myers Investigative & Sec. Servs. v. United States*, 275 F.3d 1366, 1369-70 (Fed. Cir. 2002).

Within the context of a bid protest dispute, this Court may consider "an action by an interested party objecting to . . . any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). In evaluating whether a plaintiff in a bid protest case qualifies as an "interested party," the Court looks to the definition of "interested party" provided in the Competition in Contracting Act ("CICA"). *Myers*, 275 F.3d

at 1370 (quoting *Am. Fed'n of Gov't Emps. v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2001) ("In bid protests under the Tucker Act, 'we . . . construe the term "interested party" . . . in accordance with the . . . CICA . . . .'")). And so, an interested party is a plaintiff that is "an actual or prospective bidder or offeror whose direct economic interest would be affected by the award of the contract or by failure to award the contract." 31 U.S.C. § 3551(2)(A); *see also id.*

To establish that it has a "direct economic interest" in the outcome of a government procurement, a plaintiff "must show that it had a 'substantial chance' of winning the contract." *Orion Tech., Inc. v. United States*, 704 F.3d 1344, 1348 (Fed. Cir. 2013). In addition, a party must demonstrate prejudice by showing that "but for the [alleged] error, it would have had a substantial chance of securing the contract." *Labatt Food Serv., Inc. v. United States*, 577 F.3d 1375, 1378 (Fed. Cir. 2009) (citation omitted). Given this, the Court inquires as to whether the plaintiff would have had a substantial chance of winning the contract, but for the alleged error in the procurement, in assessing standing. *See CliniComp Intern., Inc. v. United States*, 904 F.3d 1353, 1358 (Fed. Cir. 2018). And so, a plaintiff in a bid protest case has standing if it: (1) is an actual or prospective bidder and (2) has a direct economic interest in the procurement at issue. *Diaz v. United States*, 853 F.3d 1355, 1358 (Fed. Cir. 2017).

### C. Judgment Upon The Administrative Record

Unlike a summary judgment motion brought pursuant to RCFC 56, "the existence of genuine issues of material fact does not preclude judgment on the administrative record" under RCFC 52.1. *Tech. Sys., Inc. v. United States*, 98 Fed. Cl. 228, 242 (2011); *see* RCFC 56. Rather, the Court's inquiry is whether, "given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006) (citing *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005)).

### D. Injunctive Relief

Lastly, the Tucker Act authorizes this Court to "award any relief that the court considers proper, including . . . injunctive relief" in bid protest matters. 28 U.S.C. § 1491(b)(2); *see* RCFC 65. In deciding whether to grant injunctive relief, the Federal Circuit has directed that the Court consider: (1) whether the plaintiff is likely to succeed on the merits of the case; (2) whether the plaintiff will suffer irreparable harm if the Court withholds injunctive relief; (3) whether the

9

balance of hardships to the respective parties favors the grant of injunctive relief; and (4) whether it is in the public interest to grant injunctive relief. *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004); *see also FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993); *OAO Corp. v. United States,* 49 Fed. Cl. 478, 480 (2001).  The Federal Circuit has also held that "[n]o one factor, taken individually, is necessarily dispositive. . . . [T]he weakness of the showing regarding one factor may be overborne by the strength of the others." *FMC Corp.*, 3 F.3d at 427.  But, "the absence of an adequate showing with regard to any one factor may be sufficient, given the weight or lack of it assigned the other factors, to justify the denial" of a motion for injunctive relief.  *Id.*

## IV.     LEGAL ANALYSIS

The government and Cape Moraine have moved to dismiss this bid protest matter upon the ground that VAS lacks standing, because VAS is ineligible for award of the ICE Lease.[4] Def. Mot. at 14-18; Def.-Int. Mot. at 14-17.  VAS counters that it has standing to pursue this bid protest matter, because its final revised proposal complied with the requirements of the RLP, and the directions of GSA's contracting officer, regarding offering the government office space in excess of the RLP's maximum ABOA square footage requirement.  Pl. Resp. at 4-8.  And so, VAS requests that the Court exercise jurisdiction over its bid protest claims.  *Id.* at 7.

The parties have also filed cross-motions for judgment upon the administrative record on issues related to the soundness of GSA's evaluation process and decision to award the ICE Lease to Cape Moraine.  *See* Pl. Mot.; Def. Mot; Def.-Int. Mot.  Specifically, VAS argues in its motion for judgment upon the administrative record that:  (1) GSA's acceptance of Cape Moraine's late proposal was arbitrary and capricious; (2) GSA's broker, Jones Lang LaSalle Americas, Inc., conducted a flawed present value analysis; (3) GSA improperly accepted Cape Moraine's proposal, because Cape Moraine did not control the property that it offered when Cape Moraine submitted its proposal; and (4) GSA arbitrarily determined that VAS's proposal fell outside of the competitive negotiation range.  Pl. Mot. at 17-37.  And so, VAS requests that the Court set aside GSA's award decision.  *Id.* at 40.

---

[4] The government and Cape Moraine also argue that the Court should dismiss this matter because VAS has delayed bringing its bid protest claims following the award of the ICE Lease.  *See* Def. Mot. at 18-20; Def.-Int. Mot. at 10-14.

10

The government and Cape Moraine counter in their respective cross-motions for judgment upon the administrative record that GSA: (1) conducted a reasonable evaluation process that was consistent with the terms of the RLP and applicable law; (2) reasonably concluded that Cape Moraine was the lowest-priced, technically acceptable offeror; and (3) appropriately decided to award the ICE Lease to Cape Moraine. Def. Mot. at 23-28; Def. Int. Mot. at 20-34. And so, the government and Cape Moraine request that the Court sustain GSA's award decision. *See* Def. Mot. at 29; Def.-Int. Mot. at 38.

For the reasons discussed below, the administrative record shows that VAS's final revised proposal did not comply with the RLP's requirements regarding the maximum ABOA square footage of the ICE Lease. Given this, VAS has not shown that it was eligible to be awarded the ICE Lease and, therefore, VAS lacks standing to bring this bid protest action. And so, the Court: (1) **GRANTS** the government's and Cape Moraine's motions to dismiss; (2) **DENIES-as-MOOT** VAS's motion for judgment upon the administrative record; (3) **DENIES-as-MOOT** the government's and Cape Moraine's cross-motions for judgment upon the administrative record; and (4) **DISMISSES** the complaint.

> **A.    VAS Lacks Standing**

As an initial matter, the administrative record makes clear that VAS lacks standing to pursue this bid protest matter, because it was not eligible to be awarded the ICE Lease. And so, for the reasons that follow, the Court must dismiss this matter for lack of subject-matter jurisdiction. RCFC 12(b)(1).

It is well-established that VAS must show that it: (1) is an actual or prospective bidder and (2) has a direct economic interest in the procurement at issue, to have standing to bring this bid protest case. *Diaz v. United States*, 853 F.3d 1355, 1358 (Fed. Cir. 2017). Because there is no dispute that VAS was an actual bidder for the ICE Lease, the Court focuses its standing analysis on whether VAS has a direct economic interest in the award of this lease. *See* Pl. Mot. at 8; Def. Mot. at 5; Def.-Int. Mot. at 6; *see also* AR Tab 21 (VAS's final proposal revision).

To establish that it has a "direct economic interest" in the outcome of the procurement for the ICE Lease, VAS must show that it had a "substantial chance" of winning this lease, but for the alleged evaluation errors raised in this case. *Myers Investigative & Sec. Servs. v. United*

*States*, 275 F.3d 1366, 1370 (Fed. Cir. 2002); *CliniComp Intern., Inc. v. United States*, 904 F.3d 1353, 1358 (Fed. Cir. 2018). VAS has not made such showing here for several reasons.

First, the administrative record shows that VAS's final revised proposal for the ICE Lease did not comply with the requirement in the RLP regarding the maximum ABOA square footage for the office space to be leased to GSA. Specifically, the plain terms of the RLP make clear that GSA sought a maximum of 20,579 ABOA square feet of useable office space for the ICE Lease. AR Tab 10 at 48; AR Tab 15 at 268-69. It is also undisputed in this case that VAS offered its property located at 1 International Way, Warwick, Rhode Island in response to the RLP, which includes 26,087 ABOA square feet of usable office space—approximately 5,508 square feet in excess of the RLP's requirement. Pl. Mot. at 4; Def. Mot. at 4; Def.-Int. Mot. at 4; *see also* AR Tab 21 (VAS's' final proposal revision).

A reading of the RLP also makes clear that the maximum square footage requirement for the ICE Lease is a material term of the RLP. This Court has previously held that the maximum rentable square footage specified in the RLP constitutes a material term of a leasehold procurement, because maximum rentable square footage is essential to determining the price of the lease and addresses the quantity of space that the government is procuring. *Springfield Parcel C, LLC v. United States*, 124 Fed. Cl. 163, 183-84 (2015). The Court has also held that a "solicitation term is 'material' if failure to comply with it would have a non-negligible effect on the price, quantity, quality, or delivery of the supply or service being procured." *Furniture by Thurston v. United States*, 103 Fed. Cl. 505, 518 (2012) (citation omitted).

In this case, the record evidence shows that the RLP clearly states the maximum rentable square footage requirement for the ICE Lease is 20,579 ABOA square feet and that a deviation from this maximum square footage would have a significant impact on the price for the ICE Lease. *See* AR Tab 10 at 49 ("Rent shall be based upon a proposed rental rate per Rentable Square Foot . . . ."). Given this, GSA reasonably found VAS's proposal to be deficient, because VAS offered office space in excess of the RLP's requirement. AR Tab 12 at 199 (GSA deficiency letter to VAS directing VAS to, among other things, correct the amount of offered rentable square footage in its proposal to match the advertised square footage amount); AR Tab 19 at 357 (GSA deficiency table noting that GSA "doesn't need the additional 6,333 RSF available in [the] building that [VAS] is charging for").

As the Federal Circuit has explained, "a proposal that fails to conform to the material terms and conditions of the solicitation should be considered unacceptable and a contract award based on such an unacceptable proposal violates the procurement statutes and regulations." *E.W. Bliss Co. v. United States*, 77 F.3d 445, 448 (Fed. Cir. 1996) (citation omitted); *see also Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009) ("To be acceptable, a proposal must represent an offer to provide the exact thing called for in the request for proposals, so that acceptance of the proposal will bind the contractor in accordance with the material terms and conditions of the request for proposals."). And so, in this case, VAS was not eligible to be awarded the ICE Lease, because its proposal failed to comply with a material term of the RLP regarding maximum square footage for the ICE Lease. For this reason, VAS has not shown that it has a "direct economic interest" in the outcome of the procurement for the ICE Lease. *Meyers*, 275 F.3d at 1370; *CliniComp Intern., Inc.*, 904 F.3d at 1358.

The Court is also unpersuaded by the arguments that VAS advances to show that it has standing. First, VAS argues that it may pursue this bid protest, because GSA determined that its final revised proposal was technically acceptable during the procurement process. Pl. Resp. at 4-5. But, even if GSA found VAS's proposal to be technically-acceptable, the Court must independently consider whether VAS has standing to pursue this bid protest. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ("[C]ourts . . . have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.") (citation omitted). Because, as discussed above, the record evidence in this case shows that VAS did not comply with a material term of the RLP, VAS lacks standing to pursue its claims.

VAS's argument that it has standing to bring this bid protest, because the RLP allows offerors to offer office space in excess of the RLP's maximum square footage requirement, is also belied by the record evidence. Pl. Resp. at 6-8. While VAS correctly observes that the RLP contains provisions that provide a procedure for offerors to submit proposals that deviate from the RLP's stated requirements, these provisions do not *require* that GSA accept such deviations. AR Tab 10 at 59 (providing procedures for offerors to follow in offering terms that differ from the RLP's stated requirements); AR Tab 10 at 121 (stating that "[o]fferors may submit proposals that depart from [the RLP's] stated requirements"). There is also no evidence in the administrative record to show that GSA accepted VAS's proposal to increase the square footage

13

for the ICE Lease, or that VAS complied with the RLP's procedures for deviating from its requirements.[5]  AR Tab 10 at 59 (stating that if an offeror requests any deviations, GSA "at its sole discretion will make the decision whether or not to accept the deviation"); AR Tab 19 at 357 (table of deficiencies stating that GSA "doesn't need the additional 6,333 [rentable square feet] available in [the] building that [VAS] is charging for").

VAS's final argument—that VAS has standing because it included the excess square footage of office space in its final revised proposal at the direction of GSA's contracting officer—is equally unavailing.  The record evidence shows that the cover letter to VAS's second revised proposal states that VAS included the cost of certain excess office space that it deemed "unmarketable" at the suggestion of the GSA contracting officer.  AR Tab 17 at 272.  But, again, VAS has not shown that it followed the RLP's procedures for deviating from the square footage requirement, nor that GSA accepted VAS's proposed deviation regarding maximum square footage.  *See* AR Tab 10 at 59, 121.  Given this, VAS simply has not shown that it was eligible to be awarded the ICE Lease.[6]

## V. CONCLUSION

Because the record evidence in this case makes clear that VAS was not eligible to be awarded the ICE Lease, VAS has not established that it has standing to pursue its bid protest

---

[5] The Court agrees with the government that "VAS failed both in the substantive and the procedural aspect[s] for invoking any sort of deviation from the RLP." Tr. at 29:20-29:22.  The RLP requires that "[a]ny deviations must be requested prior to the request for final proposal revisions." AR Tab 10 at 59. The RLP also requires that any proposal that departs from the RLP's stated requirements "shall clearly identify why the acceptance of the proposal would be advantageous to the [g]overnment" and that the "proposal must clearly identify and explicitly define any deviations . . . [and] the comparative advantage to the [g]overnment." *Id.* at 121.  A review of VAS's final revised proposal makes clear that VAS did not follow these procedures.  *See* AR Tab 21 at 361 (showing that VAS did not request a deviation from the RLP's ABOA square footage requirement prior to GSA's request for final proposal revisions, which occurred on July 9, 2018, nor explained in its proposal why deviating from the RLP's maximum ABOA square footage requirement would be advantageous to GSA).

[6] VAS has submitted the Declaration of Doreen Scola, the administrator of VAS, stating that, among other things, the GSA contracting officer told her that VAS could continue to include any space deemed "unmarketable" in its proposal, during a meeting held on December 11, 2017.  Compl. Ex 1 at ¶ 3.  To the extent that this declaration has been properly submitted to the Court to address the jurisdictional issues raised in this case, Ms. Scola's declaration does not rebut the evidence in the administrative record showing that VAS did not follow the RLP's procedures for deviating from the RLP's requirements.  *See generally* AR Tab 21.  Because the Court concludes that VAS lacks standing, it does not reach the merits of VAS's bid protest claims or its request for injunctive relief.

claims in this matter. And so, the Court must dismiss this bid protest matter for lack of subject-matter jurisdiction. RCFC 12(b)(1). The Court does not reach the merits of VAS's challenges to GSA's evaluation process and award decision. And so, for the foregoing reasons, the Court:

1. **GRANTS** the government's and Cape Moraine's motions to dismiss;

2. **DENIES-as-MOOT** VAS's motion for judgment upon the administrative record;

3. **DENIES-as-MOOT** the government's and Cape Moraine's cross-motions for judgment upon the administrative record; and

4. **DISMISSES** the complaint.

The Clerk shall enter judgment accordingly.

Each party to bear its own costs.

Some of the information contained in this Memorandum Opinion and Order may be considered protected information subject to the Protective Order entered in this matter on October 22, 2020. This Memorandum Opinion and Order shall therefore be filed **UNDER SEAL**. The parties shall review the Memorandum Opinion and Order to determine whether, in their view, any information should be redacted in accordance with the terms of the Protective Order prior to publication. The parties shall **FILE** a joint status report identifying the information, if any, that they contend should be redacted, together with an explanation of the basis for each proposed redaction on or before **June 1, 2021**.

**IT IS SO ORDERED.**

                                                s/ Lydia Kay Griggsby
                                                LYDIA KAY GRIGGSBY
                                                Judge